

RAINONE
COUGHLIN
MINCHELLO
ATTORNEYS AT LAW

Louis N. Rainone
Craig J. Coughlin*
David L. Minchello
Ronald H. Gordon
Carol A. Berlen
John F. Gillick
Brian P. Trelease*
Claudia Marchese
Matthew R. Tavares*
Sapana Shah*Δ
Michael R. Burns ✦
Christopher D. Zingaro
John P. Harrington

Thomas Schoendorf
Nahimot A. Adedimeji*
Corissa L. Sherman
Frank J. Dyevoich*
Lonnie J. Hinton, Jr.,
Harlynne A. Lack*
Aaron L. Rainone

* Also admitted in New York
Δ Also admitted in DC
✦ Also admitted in Pennsylvania

Fdyevoich@NJRCMLAW.com

March 20, 2023

**VIA ELECTRONIC FILING (PACER)**
Honorable Lois H. Goodman, U.S.M.J.
United States District Court of New Jersey
Clarkson S. Fisher Building & U.S. Courthouse
402 E State St, Room 7E
Trenton, NJ 08608

Re: **Khallista Johnson as Administrator of the Estate of Dion Harrell v. State of New Jersey, et al.**
**Civil Action No.: 18-cv-11299**
**Our File No.: 75-0004**

Dear Judge Goodman:

This law firm represents Defendants, Brian O'Gibney ("O'Gibney") and the City of Long Branch (the "City")(collectively the "City Defendants"), in the above-referenced matter. On behalf of the City Defendants, please accept this brief in lieu of a more formal brief in opposition to Plaintiff's Motion to Amend the

555 U.S. Highway One South
Suite 440
Iselin, New Jersey 08830

Tel:(732)709-4182
Fax(732) 791-1555
www.njrcmlaw.com

277918v1

Complaint currently pending before Your Honor and returnable November March 20, 2023.

## **PRELIMINARY STATEMENT**

Plaintiff, Dion Harrell (hereinafter "Plaintiff"), was arrested with probable cause for a 1988 rape. The victim worked at McDonald's at the time, and she called the Long Branch Police Department to report that the man who had raped her was inside the McDonald's where she worked. Based on the victim's personal and specific identification, Plaintiff was arrested shortly after the victim's phone call and brought to the police headquarters. **At Plaintiff's request**, the officers allowed him a face-to-face encounter with his accuser at the police station, a common police practice at the time, at which time the victim looked right at Plaintiff and told the officers "that's him." Accordingly, Plaintiff was charged with rape. From that point on, the State of New Jersey took over the prosecution of Plaintiff's case.

Plaintiff now seeks to amend the complaint to allege completely speculative Brady violations against the City of Long Branch, based on  weak testimony elicited from Henry Swordsma ("Swordsma"), supervisor to Defendant, John T. Nichols, at the State forensics lab. Plaintiff states that Swordsma recalled informing Long Branch Police Officer Gregory Crumrine ("Crumrine") that the forensic testing of Plaintiff's blood and saliva with that of the victim both showed they possessed "Substance H," which

2

meant that they were both secretors and belonged to blood group O, and that no conclusions could be drawn from the samples. However, Plaintiff falsely claims that Crumrine was required to put this information in a report (no requirement exists) and that he failed to do so, to which there is zero evidence.

Additionally, Plaintiff conveniently fails to attach Swordma's complete deposition transcript to this Motion, which contains follow-up testimony by Swordsma that the presence of Substance H in both samples is in fact contained in the results of the lab report, and that specifically identifying that both samples possessed Substance H is not required to be written down in a report. Nor is it required to specifically identify that no conclusions could be drawn from the samples.

The other issue here is that Plaintiff is entirely speculating on what Officer Crumrine did or did not do with the information given to him by Swordsma. Furthermore Crumrine passed away in 1996, so he certainly cannot testify in his defense. Additionally, the law only requires that if Crumrine was given <u>Brady</u> material (he was not), his duty is satisfied by simply informing the prosecutor, even if only verbally (set forth more fully below).

Here, there is no evidence that Crumrine did not inform the prosecutor of what Swordsma told him, and the prosecutor from this case is also deceased, thus there exists no one who can testify or prove what Crumrine may or may not have told him. To allow

3

Plaintiff to amend the complaint with an allegation that is impossible to prove and to which the City Defendants have no witnesses to present in defense, would be highly prejudicial to the City Defendants.

Further, if it is determined that the information given to Crumrine from Swordsma is in fact <u>Brady</u> material (it is not), the facts of this case and the testimony at Plaintiff's trial prove that the admittance of that evidence would not have changed the outcome of the verdict, thus, no <u>Brady</u> violation occurred. Accordingly, Plaintiff's newly sought allegation of a <u>Brady</u> violation is futile and must not be allowed.

The facts are simple. We do not know anything surrounding Officer Crumrine and what he may or may not have done with information that was given to him by Swordsma. Plaintiff's proposed <u>Brady</u> allegations that surround Officer Crumrine are an entirely speculative backdoor attempt at strengthening the already weak claims against the City Defendants in this case, and to allow these purely speculative claims centered on the conduct of a deceased officer and a duty to provide information to a deceased prosecutor, would be substantially prejudicial to the City Defendants and irreconcilably detrimental to their ability to properly defend against Plaintiff's allegations.

City Defendants would be equally prejudiced in having to re-open discovery this late in the litigation. Swordsma would have to

be re-deposed as Defendants were not aware of Plaintiff's proposed allegations prior to his initial deposition and therefore had no reason for follow-up questioning on the Substance H testimony. Additionally, Defendant Nichols would need to be re-deposed, and the City would need to go on a fishing expedition for records from 40 years ago;an undertaking that is unduly burdensome to the City Defendants, and likely impossible.

Lastly, Plaintiff's proposed amendment to add a <u>Brady</u> violation for the alleged failure to disclose is rooted in a poor understanding of Plaintiff's criminal trial, and the evidence that was known and/or presented to his defense counsel. As set forth more fully below, Plaintiff's defense counsel was aware that the forensic testing on Plaintiff and the victim was inconclusive due to the fact that both were Substance H secretors belonging to the blood group O becauseshe made that exact argument in her closing summation.

Thus, Plaintiff is unable to prove that the prosecution was in possession of "exculpatory" information that was not provided to the defense when, in fact, the defense reiterated the alleged <u>Brady</u> material and made that exact argument (that the samples were inconclusive) in her closing argument, incontrovertibly proving that the defense was in possession of the alleged <u>Brady</u> material Plaintiff now wishes to claim was never provided to the defense.

Accordingly, Plaintiff's amendment should be denied on the grounds of prejudice and futility.

## **PROCEDURAL HISTORY**

On July 2, 2018, Plaintifffiled a Complaint in the New Jersey District Court.  On October 20, 2020, Plaintiff amended his complaint, asserting violations of the following causes of action:

1. **Count One:** Violations of 4th, 5th, 6th and 14th Amendments for fabrication of evidence as to O'Gibney and Defendant John Nichols;
2. **Count Two:** Violations of 4th, 5th, 6th and 14th Amendments for <u>Brady</u> violations against Nichols;
3. **Count Three:** Violation of New Jersey Civil Rights Act against New Jersey, State Police, the City of Long Branch, O'Gibney and Nichols;
4. **Count Four:** Common law negligence against New Jersey, State Police, the City of Long Branch, O'Gibney and Nichols;
5. **Count Five:** Common Law Malicious Prosecution against the City of Long Branch and O'Gibney
6. **Count Six:** Prosecution without probable cause under 42 U.S.C. §1983 against O'Gibney.

**(Dkt. No. 49)**

All the aforementioned claims allege that Defendants deprived Plaintiff of his constitutional rights under the Constitutions of the United States and the State of New Jersey.  Specifically, Counts One and Two allege violations of the Fourth, Fifth, Sixth, and Fourteenth Amendments to the Constitution of the United States.  On November 5, 2020, the City Defendants filed an Answer to Plaintiff's Amended Complaint.**(Dkt. No. 52).**

In conjunction with the Court's scheduling orders, the parties engaged in over three (3) years of discovery.  Defendants have

produced over 1,000 pages of documents.  The following depositions have been conducted:

1. Plaintiff (now deceased);
2. Defendant, John T. Nichols;
3. Defendant, Brian O'Gibney;
4. Victim, CA; and
5. Witness Henry Swordsma.

The only remaining discovery still to be addressed as to the counts of Plaintiff's current Complaint are the production of expert reports and subsequent depositions.  The City Defendants then intend to file a Motion for Summary Judgment.

Despite years of litigation and the conclusion of fact and party witness depositions, on February 10, 2023, Plaintiff filed a Motion to Amend the Complaint (**Dkt. No 88).** Defendants respectfully submit this letter brief in opposition to Plaintiff's Motion and request that the Court deny Plaintiff's prayer for relief.

Plaintiff claims that the proposed amendment would not require additional discovery if allowed, however, we vehemently disagree with that contention. At the very least, Swordsma would have to be re-deposed so that the defense can question him on his note to Crumrine and what was or was not presented to the prosecutor. We also submit that Plaintiff's criminal defense attorney would need to be deposed as well to garner what information she was provided, and what information she was and was not aware of at the time of Plaintiff's trial.

7

## **STATEMENT OF FACTS**

Plaintiff has presented a skewed version of the "facts" in this case, and has made assumptions in order to fit his narrative, ignoring contradictory evidence. We first address each misstatement in turn and follow with additional facts that make it clear Plaintiff's proposed amendments are futile.

Plaintiff states in his preliminary statement that "Defendant Nichols told prosecutors, and then testified, that there was a 98% chance that the blood type evidence recovered from the victim belonged to the Plaintiff, however, there is no citation to where Nichols said this. Indeed, because he never did. Nichols testified that "80% of the population are secretors," that "40 to 45% of the population are O's (blood group O)," and that "the victim and the suspect would fall in line with 40 to 45% of the population." *See* Affirmation of Frank J. Dyevoich (hereinafter "Dyevoich Aff. At ___"), **Exhibit A**, Transcript Page 79..

His testimony broke down the percentages even further when Nichols testified that "32% of the population will fall into Group O secretor," and that when broken down into males versus females, "you have approximately 16% of males would be O secretors." Id. at Transcript Page 80. His ultimate conclusion was that the seminal fluid, when combined with the fact that the person is an O secretor, is only capable of coming from 16% of the population. Id. at Transcript Page 81. On cross-examination, defense counsel

8

clarified these percentages and pointed out that Plaintiff is placed "in the general population 40 to 45% secretor population of about 32% male secretor population of about 16%?" <u>Id</u> at Transcript Page 87.

Defense counsel also clarified that these results were not conclusive as she stated "would it be fair to say that **in no way, shape or form are you trying to give the jury the impression that because Mr. Harrell is an O secretor that there is a good chance that he is the one who actually committed this assault?**" <u>Id.</u> Nichols responded to this question by stating "I'm saying that Mr. Harrell would fit the statistical representation of those people that could contribute to that stain. I'm not, in other words, I'm not excluding him. I am only including him in that number of people who could have caused that stain." <u>Id.</u> Defense counsel clarified that the number of people who could have caused that stain was a wide range of the population, to which Nichols answered "yes. It's 16% of the male population." <u>Id.</u> at 87-88.

Plaintiff next incorrectly states that Nichols admitted he was required to write a report that stated specifically, that no conclusions could be drawn. Indeed, the opposite is true. Plaintiff conveniently attached a portion of Nichols deposition testimony, but cut it off before Nichols states, clear as day, that he was **not** required to report that specific conclusion

Plaintiff's counsel cut off the transcript of Nichols' deposition on Page 192 in his submission to the Court, however, on page 193, Plaintiff's counsel asked Nichols: "were you required to issue a conclusion in your reports?" to which Nichols answered "no." Dyevoich Aff. **Exhibit D**, Transcript Page 192-193.

Plaintiff next states that during Swordsma's deposition, he remembered telling Crumrine that the testing was meaningless, and Crumrine never put this information in a report. Plaintiff attempts to trick the Court into believing that Detective Crumrine was required to put this information into a report, when in fact, he was not. Swordsma also testified that this information was not required to be written in a report.

Swordsma testified that the forensic results of both the victim and Plaintiff were included in the reports, and that specifically reporting the conclusion that the tests were inconclusive due to both samples being Blood Group O secretors, was not required to be delineated in the report. Dyevoich Aff. **Exhibit E**, Transcript Page 30-31.

Plaintiff last asserts that it was recently discovered that Officer Crumrine knew about the alleged exculpatory information regarding the forensic testing, but then makes the unwarranted leap that Crumrine failed to document this information and failed to turn it over as Brady evidence. The fact is, Plaintiff has no idea what Crumrine did with this information. If it is determined

10

that the information is exculpatory <u>Brady</u> material (it is not), all that Crumrine was required to do was verbally inform the prosecutor. As previously stated, both Crumrine and the prosecutor are deceased, Dyevoich Aff. at ¶17-19, and therefore, it cannot be proven or disproven that Crumrine reported this information to the prosecutor.

It can, however, be logically assumed through reasonable deduction that this allegedly exculpatory <u>Brady</u> material was in fact provided to Plaintiff's defense counsel, as required, because she made the specific argument in her closing summation that the forensic results were inconclusive Dyevoich Aff. **Exhibit B**, Transcript Page 24-25.

> "Then we get to Mr. Nichols. And Mr. Nichols did, oh, the blood work and a few other things. Now, the blood shows that the victim and the defendant have the same blood type. They're both O. They're both secretors. That puts the two of them in the forty to forty-five percent population range, that being the majority of the population." 24:14-19
>
> **"Basically the State Police lab results are <u>inconclusive. They don't tell you anything. They tell</u> <u>you basically that [victim's name] had sexual relations</u> <u>with somebody who is a type O secreter. That's it."</u> 25:14-17.**

Additionally, Plaintiff's defense counsel was clearly aware that the test results were inconclusive, but she failed to question Nichols about that issue during her cross-examination. She instead focused on the availability of DNA

testing at the time and why the State did not send the samples to the FBI. Dyevoich Aff. **Exhibit A**. This error in strategy cannot be attributed to the State of New Jersey or the forensic scientists in the State Lab, let alone on the City Defendants. Rather than present a rebuttal witness against the forensics, or question Nichols on the inconclusive nature of the lab tests results, she chose instead to center her defense around Plaintiff's alibi.

Further, it is incontrovertible that had the defense been given the information that the forensic testing was inconclusive, it would not have changed the outcome of the verdict. Indeed, the defense was given said information and was well aware that the testing was inconclusive, as evidenced by the fact that she argued as such in her closing argument, and the jury nevertheless found Plaintiff guilty of sexual assault.

Clearly, the jury must have been more convinced by the victim's testimony that she had seen Plaintiff before the assault, that she clearly saw Plaintiff's face during the assault when he was on top of her, when she identified Plaintiff as her rapist when she saw him later on inside the McDonald's she worked at, and when she identified him again later on at the police station when she looked him dead in the face and told Defendant O'Gibney that it was Plaintiff

who had raped her. Dyevoich Aff. **Exhibit C**, Transcript Pages 5-7.

## LEGAL ARGUMENTS

## POINT I

### STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 15(a), "a party may amend its pleading only with the opposing party's written consent or the court's leave" and "[t]he court should freely give leave *when* justice so requires." The decision to grant leave to amend rests within the sound discretion of the trial court. See Zenith Radio Corp. v. Hazeltine Rsch. Inc., 401 U.S. 321, 330 (1970).

In determining a motion for leave to amend, Courts consider the following factors: (1) undue delay on the part of the party seeking to amend; (2) bad faith or dilatory motive behind the amendment; (3) repeated failure to cure deficiencies through multiple prior amendments; (4) undue prejudice on the opposing party; and/or (5) futility of the amendment. See Great W. Mining & Min. Co. v. Fox Rothschild LLP, 615 F.3d 159, 174 (3d Cir. 2010) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)). The Court should deny leave when these factors "suggest that amendment would be 'unjust' ... [.]" Arthur v. Maersk, Inc., 434 F.3d 196, 203 (3d Cir. 2006).

<u>**POINT II**</u>

**<u>PLAINTIFF'S MOTION FOR LEAVE TO AMEND THE COMPLAINT SHOULD
BE DENIED AS THE DEFENSE WAS AWARE OF THE INCONCLUSIVE NATURE OF
THE SEROLOGY TESTING AND THUS THE PROPOSED AMENDMENT IS FUTILE</u>**

The information that Plaintiff alleges is exculpatory and was withheld from the defense, specifically that the State lab test results were inconclusive because the victim and Plaintiff were both substance H Blood Group O secretors, was explicitly argued by the defense in the closing argument of Plaintiff's criminal trial.

An amendment will be considered futile if it "is frivolous or advances a claim or defense that is legally insufficient on its face." <u>Harrison Beverage Co. v. Dribeck Imps., Inc.,</u> 133 F.R.D. 463, 468 (D.N.J. 1990) (citations omitted). In determining whether an amendment is insufficient on its face, the Court employs the same standard as in a Rule 12(b)(6) motion to dismiss. <u>In re Burlington Coat Factory Sec. Litig.,</u> 114 F.3d 1410, 1434 (3d Cir. 1997) (citation omitted).

It is well established that the futility of amendment is one of the factors that may be considered by the Court in denying a motion to amend. See <u>Forman</u>, 371 U.S. at 182; see also <u>Fed. Deposit Ins. Corp. v. Bathgate</u>, 27 F.3d 850, 874 (3d Cir. 1994); <u>Averbach v. Rival Mfg. Co.</u>, 879 F.2d 1196, 1203 (3d Cir. 1989). "'Amendment of the complaint is futile if the amendment will not cure the deficiency in the original [pleading] or if the amended [pleading]

14

cannot withstand a renewed motion to dismiss.'" <u>Citizens Bank of
Pa. v. Reimbursement Techs., Inc.</u>, 609 Fed. Appx. 88, 95 (3d Cir.
2015) (quoting <u>Jablonski v. Pan Am. World Airways, Inc.</u>, 863 F.2d
289, 292 (3d Cir. 1988)) (alternation in the original).

In other words, "'[f]utility means that the complaint, as
amended, would fail to state a claim upon which relief could be
granted.' <u>Shane v. Fauver</u>, 213 F.3d 113, 115 (3d Cir. 2000). Thus,
if the proposed amendment *is frivolous* or advances a claim or
defense that is legally insufficient on its face, the Court should
deny leave to amend. See <u>Harrison Beverage Co. v. Dribeck Imp.,
Inc.</u>, 133 F.R.D. 463, 468 (D.N.J. 1990).

Here, Plaintiff seeks to amend the Complaint to add a claim
for a violation of <u>Brady v. Maryland</u>, 373 U.S. 83 (1963) against
the City. Under <u>Brady</u>, the Supreme Court held that "the suppression
by the prosecution of evidence favorable to an accused upon request
violates due process *where the evidence is material either to guilt
or to punishment*, irrespective of the good faith or bad faith of
the prosecution." <u>Id.</u> at 87. Evidence is favorable to the accused
under <u>Brady</u> "if it would *tend to exculpate him* or reduce the
penalty" <u>Id.</u> at 87-88. The duty of disclosure is not limited to
evidence the prosecutor is aware of. <u>Kyles v. Whitley</u>, 514 U.S.
419, 438 (1995). Thus, under <u>Brady</u>, "the individual prosecutor has
a duty to learn of any favorable evidence known to the others

acting on the government's behalf in the case, including the police." Id. at 437.

Even though this duty of disclosure is tightly tethered to constitutional guarantees of due process, "the Constitution is not violated every time the government fails or chooses not to disclose evidence that might prove helpful to the defense." Id. at 436-37 (citation omitted). Rather, the prosecution's failure to disclose evidence rises to the level of a due process violation "*only if the government's evidentiary suppression undermines confidence in the outcome of the trial.*" Id. at 434. Thus, "the question is not whether the defendant would more likely than not have received a different verdict with the [concealed] evidence, *but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence*." Id.

Additionally, Courts have routinely held that withholding Brady material does not automatically mean that there was a Brady violation. The question of whether the prosecution must disclose evidence, i.e. whether the evidence is Brady material, must be determined independently of an inquiry into whether suppression of that evidence undermines confidence in the outcome of a criminal trial, i.e., whether the evidentiary suppression constitutes a Brady violation. Smith v. Holtz, 210 F.3d 186, 196 (3d Cir. 2000).

In Strickler v. Greene, 527 U.S. 263 (1999), the Court stated:

The term "Brady violation" is sometimes used to refer to any breach of the broad obligation to disclose exculpatory evidence -- that is, to any suppression of so-called "Brady material" -- *although, strictly speaking, there is never a real "Brady violation" unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict*. There are three components of a true Brady violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued.

Id. at 280.

It is clear that the evidence which was allegedly suppressed from the prosecution, specifically, that the lab results were inconclusive, is not Brady material. First, the information that the serology testing is inconclusive is not exculpatory evidence. It offers no value as to the guilt or innocence of Plaintiff. As Plaintiff's counsel has said in this motion, and as Plaintiff's defense counsel said during his criminal trial, the lab results are inconclusive and tells you nothing in regard to the guilt or innocence of Plaintiff. Thus, it cannot be considered Brady material when it admittedly has no bearing on Plaintiff's guilt or innocence under the first prong of the Brady material test.

*Assuming arguendo* that the evidence is exculpatory, Brady material must have been suppressed by the prosecution either willfully or inadvertently. Here, this information was not suppressed from Plaintiff's defense counsel as she made the exact

17

argument, that the State's lab results were inconclusive due to Harrell and the victim both being Substance H Blood Group O secretors, in her closing argument at trial. Dyevoich Aff. **Exhibit B**, Transcript Pages 24-25. It is impossible to say, and more impossible to prove, that Defense counsel was not provided with this information when she explicitly used it in her defense of Plaintiff.

Thus, the information that the serology testing was inconclusive is not <u>Brady</u> material as it was not withheld from the defense. The simple fact that Plaintiff does not have a document or official report stating the results were inconclusive does not lead to the conclusion that it was withheld from the defense, nor does Plaintiff cite to any case which so holds, indeed, because none exists, and further, because there was no requirement for that conclusion to be delineated in a report.

Additionally, the duty to provide <u>Brady</u> material to the defense falls squarely on the prosecutor. <u>Gibson v. Superintendent of N.J. Dep't of Law & Public Safety-Div. of State Police</u>, 411 F.3d 427, 442 (3d Cir. 2005). To comply with <u>Brady</u>, prosecutors must "learn of any favorable evidence known to the others acting on the government's behalf . . . including the police." <u>Kyles v. Whitley</u>, 514 U.S. 419, 437 (1995). Police officers and other state actors may be liable under § 1983 for failing to disclose exculpatory information to the prosecutor, however, their duty is

RAINONE COUGHLIN MINCHELLO
March 20, 2023
Page **19**

satisfied as soon as they advise the prosecutor of the exculpatory information. <u>Gibson</u>, 411 F.3d at 443 (citing <u>McMillian v. Johnson</u>, 88 F.3d 1554, 1567 (11th Cir. 1996) ("Investigators satisfy their obligations under <u>Brady</u> when they turn exculpatory and impeachment evidence over to the prosecutors.") and <u>Walker v. City of New York</u>, 974 F.2d 293, 299 (2d Cir. 1992) ("[T]he police satisfy their obligations under <u>Brady</u> when they turn exculpatory evidence over to the prosecutors.")). There is no requirement that <u>Brady</u> material be provided to the prosecutor in a written report, mere verbal notification satisfies the investigator or police officer's burden.

Here, there is no evidence that Officer Crumrine did not provide the prosecutor with the alleged exculpatory information. Witnesses have testified that it was not required to be written in a report and it is impossible to discover what conversations were had between Crumrine and the prosecutor as both are deceased. Dyevoich Aff. at ¶17-19. As the Courts have recognized, "the prosecution, *which alone can know what is undisclosed*, must be assigned the consequent responsibility to gauge the likely net effect of all such evidence." <u>Kyles</u>, 514 U.S. at 437.

Lastly, *assuming arguendo* that the evidence at issue is exculpatory evidence (it is not), and that the evidence was suppressed from Plaintiff's defenses counsel (it was not), the evidence is still not considered <u>Brady</u> material unless prejudice

19

to the Defendant ensued, or put another way, unless the suppression of that evidence undermines the conviction. <u>Holtz</u>, 210 F.3d at 196. The 'touchstone of materiality is a reasonable probability of a different result." <u>Kyles</u>, 514 U.S. at 434.

Here, Plaintiff was not prejudiced in his criminal trial since the exculpatory information was in fact presented to the jury in Plaintiff's defense counsel's closing argument, and the jury still convicted Plaintiff. Accordingly, the exculpatory evidence, which was presented to the jury, cannot be said to be evidence that would likely affect the outcome of the trial if it were not presented to the jury. The jury heard the argument that the State's lab results are inconclusive because the victim and Plaintiff were both substance H Blood Group O secretors. Nevertheless, the jury unanimously declared that Plaintiff was guilty. Thus, as a matter of law, there can be no reasonable probability of a different result.

Based on the foregoing, the evidence at issue is not <u>Brady</u> material, and that even if it were, there was no <u>Brady</u> violation against Plaintiff's due process rights. As such, Plaintiff's proposed amendment is frivolous in nature and must be denied on the grounds of futility.

## **POINT III**

## **PLAINTIFF'S PROPOSED AMENDMENT SHOULD BE DENIED BECAUSE IF ALLOWED THE CITY DEFENDANTS WOULD BE SUBSTANTIALLY AND UNDULY PREJUDICED.**

Factors to be considered in ruling on a motion to amend a pleading include: (1) undue prejudice to the opposing party; (2) the movant's bad faith or dilatory motives; (3) undue delay; (4) repeated failures to cure deficiencies by amendments previously allowed; and (5) futility of amendment. Foman 371 U.S. at 182.

Of the Foman factors, prejudice to the non-moving party is the touchstone for the denial of an amendment. Arthur v. Maersk, Inc., 434 F.3d 196, 204 (3rd. Cir. 2006); Lorenz v. CSX Corporation, 1 F.3d 1406, 1414 (3d Cir. 1993). Prejudice focuses on the hardship to the defendant that would result if the amendment were permitted. Cureton v. NCAA, 252 F.3d 267, 273 (3d Cir. 2001); Adams v. Gould, Inc., 739 F.2d 858, 868 (3d Cir. 1984). Merely claiming prejudice is insufficient. The party opposing amendment must show that it "was unfairly disadvantaged or deprived of the opportunity to present facts or evidence…" Dole v. ARCO Chemical Company, 921 F.2d 484, 488 (3d Cir. 1990). Thus, to determine whether prejudice exists, the court should consider "whether allowing an amendment would result in additional discovery, cost, and preparation to

21

defend against *new* facts or *new* theories." <u>Cureton</u>, 252 F.3d at 273 (emphasis added).

Additionally, the death of important witnesses is generally sufficient to establish prejudice. <u>NVF Co. v. New Castle County</u>, 276 B.R. 340, 356 (D. Del. 2002). "In the case of deceased witnesses, *the testimony of those witnesses cannot possibly be known*. In such cases, if a deceased witness could have given testimony both relevant and important to the determination of the action, that witness's death can be enough to satisfy a showing of prejudice." <u>Id.</u> <u>See</u> <u>also</u> <u>Boris v. Moore</u>, 253 F.2d 523, 524 (7th Cir. 1958) (death of witness prejudicial to party); Cf. <u>Will v. United Chambers Administrators, Inc.</u>, 1988 W.L. 6910, 3 (N.D. Ill. 1988) (death of witness not prejudicial where information available from another source).

**Death of Witnesses.**

In the case at bar, the amendment cannot be allowed as the City Defendants would be substantially and unduly prejudiced in not being able to provide the only two witnesses who could offer facts regarding the proposed <u>Brady</u> allegations. Plaintiff alleges that Officer Crumrine failed to report to the prosecutor that the lab testing results were inconclusive due to the fact that the victim and Plaintiff were both Substance H Blood Group O secretors. As set forth more fully above, Officer Crumrine's only obligation under <u>Brady</u> is to provide the alleged exculpatory information to

22

the prosecutor. He was not required to write the specific conclusion in a report, despite Plaintiff's misguided contention that he was. If Crumrine presented the alleged exculpatory information to the prosecutor over the phone or in person, then he satisfied his obligation under <u>Brady</u>.

The problem in the instant matter is that there are only two people that could testify as to what conversations may or may not have been had between Crumrine and the prosecutor.. Unfortunately, both of those individuals are deceased. Officer Crumrine passed away in 1998, and prosecutor Michael K. Cunningham passed away in 2011. Both witnesses undoubtedly would have possessed information that was both relevant and important to Plaintiff's proposed amendment to allege a <u>Brady</u> violation, and cannot be obtained from any other sources.

**Additional Discovery.**

To determine whether prejudice exists, the court should consider "whether allowing an amendment would result in additional discovery, cost, and preparation to defend against *new* facts or *new* theories." <u>Cureton</u>, 252 F.3d at 273 (emphasis added). Here, Plaintiff seeks to amend the Complaint to allege a <u>Brady</u> violation against the City based on entirely speculative conduct of Officer Crumrine. Plaintiff contends that these amendments will not require additional discovery and that all necessary witnesses have been deposed, however, that is clearly not the case.

23

If the Court were to allow Plaintiff to amend the Complaint to assert a <u>Brady</u> violation based on the speculative conduct of Officer Crumrine, it would require both additional depositions of current and new witnesses, as well as a thorough fishing expedition of documents that are over thirty years old.

Additionally, if the amendment is allowed, Defendants would need to re-depose Co-Defendant Nichols and his Supervisor Henry Swordsma with respect to the potential issue of a <u>Brady</u> violation was not known at the time they were initially deposed, and thus, Defendants have not had the opportunity to investigate and obtain discovery for these allegations. It would also require the deposition of anyone at the prosecutor's office who may still be alive that could comment on this case, as well as the deposition of Plaintiff's criminal defense counsel during his trial, Regina Sauter, to garner what type of information was or was not disclosed to her by deceased Prosecutor Cunningham. At this time, City Defendants are unable to locate any information on Ms. Sauter and whether she is alive or deceased. If she is alive, she must be located and deposed for the City Defendants to adequately defend against the proposed amended <u>Brady</u> allegations. If she is deceased, it would result in more substantial prejudice to the City Defendants if the proposed Amendment were allowed.

Based on the foregoing, Plaintiff's proposed amendment must be denied due to the clear prejudice that will undoubtedly fall on the City Defendants were it to be granted.

### CONCLUSION

Based on the foregoing, it is respectfully submitted that this Court deny Plaintiff's motion for leave to amend the Complaint on grounds of prejudice to the City Defendants and futility of the proposed claims.

Respectfully submitted,

**RAINONE COUGHLIN MINCHELLO, LLC**
Attorneys for Defendants, Brian
O'Gibney and City of Long Branch

By: _____
Frank J. Dyevoich, Esq.

Dated: March 20, 2023

25

277918v1