UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| KYHALLISTA JOHNSON, *as Administrator of the Estate of Dion Harrell*, <br><br> Plaintiff, <br><br> v. <br><br> STATE OF NEW JERSEY, *et al.*, <br><br> Defendants. | Civ. No. 18-11299 (GC)(JBD) <br><br><br> MEMORANDUM ORDER |

Before the Court is Plaintiff Kyhallista Johnson's motion to amend the complaint [Dkt. 86 ("Motion")] to assert claims under 42 U.S.C. § 1983 and the New Jersey Constitution, predicated on newly discovered evidence that she says is pertinent to alleged violations of *Brady v. Maryland*, 373 U.S. 83 (1963). Defendants oppose the Motion on the grounds that the proposed amendment would be futile and cause substantial prejudice. The Court has considered the parties' submissions and, pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1, decides the Motion without oral argument. For the reasons that follow, Johnson's Motion is granted.

**I.     BACKGROUND**

This civil rights action arises out of the investigation, prosecution, and conviction of Dion Harrell for a 1988 rape that he did not commit. *See generally* [Dkt. 1 ("Compl.").] Following his conviction, Harrell spent four years incarcerated in state prison and he spent another 26 years thereafter registered as a sex offender

under New Jersey's Megan's Law. *Id.* ¶ 2. In August 2016, DNA evidence exonerated Harrell and his conviction was vacated. *Id.* ¶ 41. Alleging that the individual Defendants violated his civil rights by fabricating evidence and maliciously and negligently causing his wrongful conviction, Harrell filed this civil action in July 2018 against the State of New Jersey (hereafter, the "State"), the New Jersey State Police (hereafter, "NJSP"), John T. Nichols (a NJSP forensic scientist), the City of Long Branch (hereafter, the "City" or "Long Branch"), and Brian O'Gibney (a Long Branch police officer). In his original Complaint, Harrell asserted the following five causes of action:

1. A federal claim under 42 U.S.C. § 1983 against Defendants O'Gibney and Nichols for violating Harrell's constitutional rights under the Fourth, Fifth, Sixth, and Fourteenth Amendments to the U.S. Constitution, based on the alleged presentation of fabricated evidence against Harrell.

2. A state claim under the New Jersey Civil Rights Act, N.J.S.A. 10:6-2, *et seq.*, against all Defendants based on the alleged presentation of fabricated evidence against Harrell.

3. A state common law claim for negligence against all Defendants based on their alleged wrongful actions resulting in Harrell's prosecution and conviction.

4. A state common law claim for malicious prosecution against Long Branch and O'Gibney based on their alleged wrongful investigation and presentation of fabricated evidence against Harrell.

5. A federal claim under 42 U.S.C. § 1983 against O'Gibney for causing Harrell's arrest and prosecution without probable cause.

*See id.*

As relevant to the Motion now before the Court, Harrell's allegations center around Nichols's serological testing—and his subsequent trial testimony regarding

that testing—of vaginal and clothing samples obtained from the victim's rape kit. *Id.* ¶¶ 28–35. Harrell alleged that Nichols presented his testing of those samples—first to the prosecutor and then to the jury—in a way that falsely conveyed that there was a 98% statistical probability that the blood-type evidence recovered from the victim belonged to Harrell. *Id.* In fact, Harrell alleged, Nichols's serological testing was inconclusive and therefore indeterminate as to the victim's assailant. *Id.* Specifically, Harrell claimed that "Nichols took evidence that would have been virtually worthless to the prosecution, and through scientific chicanery, turned it into a 98% probability that Harrell was guilty." *Id.* ¶ 35. Harrell further alleged that the prosecutor relied on Nichols's misrepresented forensic findings and statistical analyses, and emphasized that evidence to the jury at trial, thereby contributing to Harrell's wrongful conviction. *Id.* ¶¶ 36–37.

After Harrell filed the Complaint, Defendants answered and discovery ensued. In October 2020, Harrell filed an Amended Complaint, which added a new cause of action in which he asserted a *Brady* claim against Defendant Nichols. [Dkt. 49 ("Am. Compl.")] ¶¶ 60–63. That claim, listed in the Amended Complaint as the second cause of action, was predicated on Nichols's alleged failure to present certain exculpatory information relevant to his forensic testing to the prosecution's attention so that it could be turned over to the defense. *See id.* ¶ 61. Aside from the new *Brady* claim against Nichols and some other new factual allegations, the Amended Complaint largely parroted the original Complaint's core theories.

Defendants did not object to the filing of the Amended Complaint, and Nichols did not move to dismiss the new *Brady* claim against him.

When Harrell died in 2021, Johnson was substituted as Plaintiff in her capacity as administrator of Harrell's estate. Relevant to this Motion, Johnson explains that during the June 2022 deposition of Henry Swordsma (Nichols's former NJSP supervisor), Johnson learned a new and important fact. Specifically, Johnson says that she learned through Swordsma's deposition testimony that in May 1989, Swordsma informed another Long Branch detective, Gregory Crumrine, that Nichols's serological testing was inconclusive, and therefore (in Johnson's view) "meaningless." [Dkt. 88 ("Johnson Br.")] at 1, 3, 7. Johnson's proposed amended pleading, under consideration here, alleges that Nichols and Crumrine failed to inform the prosecutor of this exculpatory information.[1] As a related matter,

---

[1] Although Johnson does not refer to it as such, the proposed amended pleading now under consideration would be the Second Amended Complaint. As noted, in October 2020, Harrell filed a First Amended Complaint, which the parties agree is the operative complaint. [Dkts. 49, 103–105.] Curiously, in her motion to amend, Johnson seeks to amend the original Complaint; the proposed Second Amended Complaint omits certain factual allegations that were first asserted in the First Amended Complaint. *Compare* Dkt. 1 (original Complaint) and Dkt. 87-1 (proposed Second Amended Complaint) *with* Dkt. 49 (First Amended Complaint). Upon the Court's request for clarification, Johnson confirmed that she is indeed proposing to amend the original Complaint. *See* [Dkts. 102–03 (Johnson's proposed Second Amended Complaint found at Dkt. 103-1 is identical to her previously proposed Second Amended Complaint found at Dkt. 87-1, save for one paragraph).] At any rate, the differences between the original Complaint and the First Amended Complaint are not material to the Court's analysis. Moreover, Johnson is the master of the proposed amended pleading that she wishes to file. The Court therefore accepts Johnson's proposal to file the document found at Dkt. 103-1 as the new amended pleading. For clarity, the Court here refers to that pleading as the proposed Second Amended Complaint.

Johnson also asserts that Nichols failed to generate a report (in violation of NJSP policies) stating that his testing was inconclusive.

All of this, Johnson says, violated the constitutional rule set out in *Brady*, requiring the prosecution to disclose materially exculpatory information to the defense. Based on this new information, Johnson moves to file a proposed Second Amended Complaint [Dkt. 103-1] that effectively does the following:

1. Adds factual allegations regarding Crumrine's and Nichols's failure to alert the prosecution of exculpatory information, *i.e.*, that Nichols's serological analysis was inconclusive.

2. Folds a *Brady* theory of liability into the existing cause of action under the New Jersey Civil Rights Act and drops three of the five Defendants for that claim.

3. Adds a seventh cause of action under the New Jersey Constitution against the State, the NJSP, and the City for an alleged *Brady* violation.[2]

Defendants oppose the Motion. [Dkts. 93, 101, 104-105.] Fact discovery is complete and expert discovery is in progress. Dispositive motions are due in October 2023.

## II. LEGAL STANDARDS

Rule 15 of the Federal Rules of Civil Procedure governs amendments of pleadings. Rule 15(a)(1) provides that a party may amend once as of right within a specified time. Rule 15(a)(2), applicable here, provides that after that time has passed, a party must seek the written consent of the opposing party or leave of the Court. Leave to amend should be freely granted under Rule 15(a)(2) unless the

---

[2] The proposed seventh cause of action asserted under the New Jersey Constitution is incorrectly labeled as a sixth cause of action in the proposed Second Amended Complaint.

Page 5 of 17

Court concludes that there is "undue delay, bad faith, dilatory motive, unfair prejudice, or futility of amendment." *WHY ASAP, LLC v. Compact Power*, 461 F. Supp. 2d 308, 311 (D.N.J. 2006) (citing *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002)); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962). Applying these standards, the Court retains broad discretion to grant or deny leave to amend. *See, e.g.*, *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330 (1970).[3]

"A proposed amendment is considered futile if it 'is frivolous or advances a claim or defense that is legally insufficient on its face.'" *Est. of Vargas v. City of Bayonne*, Civ. No. 14-1048 (JMV), 2018 WL 1064209, at *3 (D.N.J. Feb. 27, 2018) (quoting *Harrison Beverage Co. v. Dribeck Imps., Inc.*, 133 F.R.D. 463, 468 (D.N.J. 1990)). "In determining whether an amendment is insufficient on its face, the Court employs the same standard as in a Rule 12(b)(6) motion to dismiss." *Id.* (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997)); *see also Massarsky v. Gen. Motors Corp.*, 706 F.2d 111, 125 (3d Cir. 1983). To make that

---

[3]  A different, more stringent rule applies if the motion seeking leave to amend is made after the passage of a deadline set by the Court in a case management order. *See* Fed. R. Civ. P. 16(b)(4). That rule does not apply here, however, because at the time Johnson first raised her request to move to amend the complaint [Dkt. 75], a scheduling order was not in force; thus, there was no operative deadline by which the parties were required to seek leave to amend. *See generally* [Dkt. 88] at 6 (explaining chronology). Indeed, in their opposition, Defendants do not contend that Rule 16(b)(4)'s good cause standard applies. Accordingly, the Court need not and thus does not address whether the timing and circumstances under which Johnson learned of her new proposed *Brady* claim constitute good cause. Incidentally, the Court commends all parties and their counsel for proceeding with discovery in good faith in the absence of an operative scheduling order.

assessment, the Court analyzes whether the plaintiff's well-pleaded, non-conclusory factual allegations, when accepted as true, are sufficient to show that the plaintiff has a plausible legal claim for relief. *See generally Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

"[S]ubstantial or undue prejudice to the non-moving party [also] is a sufficient ground for denial of leave to amend." *Cureton v. NCAA*, 252 F.3d 267, 273 (3d Cir. 2001) (citing *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993)). Regarding prejudice, the Court must "focus on the hardship to the defendants if the amendment were permitted." *Id.* (citing *Adams v. Gould, Inc.*, 739 F.2d 858, 868 (3d Cir. 1984)). Among other things, prejudice may exist when permitting an amendment "would result in additional discovery, cost, and preparation to defendant against new facts or new theories." *Id.*; *see also Rolo v. City Investing Co. Liquidating Tr.*, 155 F.3d 644, 655 (3d Cir. 1998); *Cornell Co., Inc. v. Occupational Safety & Health Rev. Comm'n*, 573 F.2d 820, 823–24 (3d Cir. 1978) (finding prejudice when proposed amendment changed legal and factual basis of claim).

### III. DISCUSSION

Defendants oppose Johnson's motion to amend on the bases of futility and prejudice. The proposed amendment, they argue, does not state a plausible *Brady* claim and therefore is futile. Moreover, Defendants argue that the amendment would cause them substantial prejudice at this late stage by, among other things, requiring the re-opening of depositions, in a context in which two potential

witnesses relevant to the proposed *Brady* claim are deceased, and the whereabouts of a third are unknown. The Court disagrees with both arguments and will permit Johnson to file the proposed Second Amended Complaint.

A. Futility

Long Branch argues that the proposed Second Amended Complaint is futile because it does not state a plausible *Brady* claim. The Court disagrees.

The Third Circuit has held that "police officers and other state actors may be liable under § 1983 for failing to disclose exculpatory information to the prosecutor." *Gibson v. Superintendent of N.J. Dep't of Law and Public Safety*, 411 F.3d 427, 443 (3d Cir. 2005), *overruled on other grounds by Dique v. N.J. State Police*, 603 F.3d 181, 182 (3d Cir. 2010). To state an actionable *Brady* claim in this context, a plaintiff must plausibly allege (i) that a defendant officer intentionally withheld evidence that was favorable to the accused, *i.e.*, that it tended to exculpate him; and (ii) that the evidence was material, *i.e.*, that there is a reasonable probability that, if the evidence had been disclosed, the result of the proceeding would have been different. *See id.*; *Telzer v. Borough of Englewood Cliffs*, Civ. No. 13-4306 (JMV), 2018 WL 1757026, at *15–16 (D.N.J. Apr. 12, 2018). Here, Johnson's proposed Second Amended Complaint alleges that Defendant Nichols and Detective Crumrine intentionally failed to inform the prosecutor of exculpatory evidence that Nichols's forensic analysis was inconclusive—that it "had no value," Dkt. 103-1, ¶ 38—and therefore could not be used to identify the perpetrator of the sexual assault. Johnson alleges that Nichols later testified to the contrary, suggesting to

the jury that his forensic analysis showed that there was a 98% probability that Harrell was the perpetrator. *Id.* ¶¶ 29–40. Johnson further alleges that the prosecutor amplified this testimony to the jury during the trial, resulting in Harrell's conviction. *Id.* ¶ 41. In the Court's view, these allegations, which must be accepted as true for purposes of the futility analysis, states a plausible *Brady* claim. Indeed, as summarized above, this is the exact theory of the already-existing *Brady* claim that Harrell included against Defendant Nichols in the First Amended Complaint, which no Defendant moved to dismiss. The Second Amended Complaint simply adds the same basic *Brady* theory against Long Branch, the State, and the NJSP based on Swordsma's testimony that he relayed Nichols's testing results to Crumrine who, Johnson alleges, likewise failed to inform the prosecution of its exculpatory character. For present purposes, the Court finds this a sufficient basis to allow Johnson to add his *Brady* claim against the other Defendants.

Resisting this conclusion, Long Branch argues that the inconclusive results of Nichols's analysis were neither exculpatory nor material in the *Brady* sense, and that in any event Johnson has failed to demonstrate that the allegedly exculpatory information was not conveyed to Harrell's criminal defense attorney. These arguments—all of which are predicated on a record-based analysis of trial and deposition testimony—are forceful and they could well win the day. But those arguments are premature. That is, the evidence may establish—at summary judgment or at trial—that the information disclosed in Nichols's forensic reports was sufficient to convey the inconclusive nature of his analysis; or that the results

of his forensic analysis was not exculpatory or material in the first place; or that representatives of the prosecution in fact learned of and then informed the defense of the relevant information. More to the point, it may well be that Johnson ultimately fails to meet her burden of persuasion on these points. At this stage, however, the Court agrees with Johnson that "[i]n conducting [the] futility analysis, the Court must accept as true all of the factual allegations in the complaint as well as the reasonable inferences that can be drawn from them," and that consideration of materials outside the complaint is improper. *Konowicz v. Carr*, Civ. No. 15-6913 (MAS), 2016 WL 3610154, at *2 (D.N.J. June 30, 2016) (citation omitted). Defendants' evidence-based arguments are fully preserved for another day.

    B.    Prejudice

The Court also disagrees that permitting Johnson's proposed amendment would cause Defendants substantial prejudice. As Defendants correctly acknowledge, "[a] mere claim of prejudice is not sufficient; there must be some showing that [the party opposing amendment] was unfairly disadvantaged or deprived of the opportunity to present facts or evidence . . . ." *Dole v. ARCO Chem. Co.*, 921 F.2d 484, 488 (3d Cir. 1990) (permitting amendment). Courts "have considered whether allowing an amendment would result in additional discovery, cost, and preparation to defend against new facts or new theories." *Cureton*, 252 F.3d at 273. In all events, however, under Rule 15 the "[p]rejudice must be substantial to justify denial of leave to amend." *Perri v. Chivens, Inc.*, Civ. No. 19-

190 (JVS), 2019 WL 7882558, at *1 (C.D. Cal. Sept. 4, 2019) (citing *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990)).

Defendants here argue that allowing the amendment would require re-opening fact discovery (which has now closed) and, most saliently, depositions. Principally, they explain that Swordsma's deposition would need to be re-opened to further probe the facts underpinning Johnson's proposed *Brady* claim. That may be true, but the burden of doing so is not substantial or unduly burdensome. Although prejudice to the non-moving party generally "is greater where the tardy amendment will require a reopening of discovery," *Harrison Beverage Co.*, 133 F.R.D. at 469, courts also routinely balance the scope of additional discovery against the strong liberal policy favoring amendment under Rule 15. *See, e.g.*, *At Home Sleep Sols., LLC v. Horizon Healthcare Servs., Inc.*, Civ. No. 18-3333 (CCC), 2020 WL 1271829, at *4 (D.N.J. Mar. 16, 2020) (where fact discovery had ended and expert discovery was ongoing, finding that defendant failed to establish undue prejudice because the proposed amendment will only require "minimal, specific additional discovery"); *Bradley v. T-Mobile US, Inc.*, Civ. No. 17-07232 (BLF), 2019 WL 2358972, at *2 (N.D. Cal. June 4, 2019) (finding minimal prejudice from allowing amendment where defendants would "have more than adequate time to brief and argue a [responsive motion] and to conduct further discovery, if necessary"); *UDAP Indus., Inc. v. Bushwacker Backpack & Supply Co.*, Civ. No. 16-27 (BU), 2017 WL 1653260, at *5 (D. Mont. May 2, 2017) (permitting amended counterclaim, noting that "[w]hile [the plaintiff] may well incur additional expense and experience some

delay, it has not shown that allowing the [c]ounterclaim will result in prejudice substantial enough to overcome the strong policy of liberally allowing amendments under Rule 15."); *Jones v. Glaxo Smithkline, Inc.*, Civ. No. 08-566 (RMC), 2009 WL 10716274, at *1 (D.D.C. Sept. 9, 2009) (allowing amendment even though it would require additional discovery, noting that where the amendment happens "after discovery ends but before summary judgment briefing, the prejudice to the defendant if any, is minimal and it simply does not override the liberal standard that this Court must apply when determining whether to grant leave to amend under Fed. R. Civ. P. 15.") (quoting *Ellis v. Georgetown Univ. Hosp.*, Civ. No. 08-1174, 2009 WL 1916315, at *7 (D.D.C. July 6, 2009)).

In this case, the Court anticipates and expects that Swordsma's re-opened deposition will be circumscribed to the issues relating to the proposed expanded *Brady* claim, *viz.*, his understanding of Nichols's testing and analyses and the circumstances under which he relayed that information to Crumrine. Defendants suggest that re-opening the depositions of Nichols may be necessary, but any re-deposition of Nichols likewise would be limited to the issue of whether or under what circumstances the allegedly exculpatory information was communicated to the prosecution. The Court also rejects Defendants' assertion that allowing the amendment would "require the deposition of anyone at the prosecutor's office who may still be alive that could comment on this case." [Dkt. 93 ("Def. Ltr. Br.")] at 24. Indeed, as explained below, it appears that the already-existing *Brady* claim did not require extensive depositions of that sort. And in the same regard, Defendants also

suggest that they would need to locate and potentially depose Harrell's trial attorney to probe whether she received the allegedly exculpatory information from the prosecutor. But the parties have made clear that no one, to date, has even spoken with the attorney in connection with this case, undermining the assertion that adding the *Brady* claim would now require her testimony.[4] Even if her testimony was both needed and available, the Court does not believe the time and resources necessary to obtain the attorney's deposition testimony is unduly prejudicial.

Defendants' intonations about the burdens of re-opening fact depositions are further misplaced when one considers that there has been an extant *Brady* claim in the case since October 2020. As described above, Harrell's First Amended Complaint asserted a *Brady* claim against Nichols based on his alleged failure to communicate the exculpatory nature of his forensic testing to the prosecution.[5] Accordingly, if Defendants really believed that they needed to ask Nichols about *Brady*-related issues during his deposition, they could have done so; and if Defendants really believed that they needed to locate and depose Harrell's defense attorney to defend against the *Brady* claim, they would have done so; and if Defendants really believed that they needed to locate and depose every former

---

[4] Long Branch's brief opposing the motion to amend makes clear that it does not know whether the attorney is alive or deceased. Def. Ltr. Br. at 24. And during a telephonic status conference with the Court on April 27, 2023, the parties advised that no one had identified or spoken with the attorney in connection with this case.

[5] Notably, the State, NJSP, and Nichols are represented by the same counsel.

member of the prosecutor's office who could comment on this case, they would have done so. Although the Court appreciates that counsel for Long Branch has not, thus far, had a need to seek defensive discovery regarding a *Brady* claim, and the Court in any event does not preclude the possibility of conducting further depositions if Defendants believe them necessary, the Court does find that, on balance, Defendants' claims of burden are overblown.

The upshot: In a case in which the parties took only a small handful of fact depositions on the existing claims, *see id.* at 7, the Court finds it unlikely that adding the additional *Brady* claim against Long Branch and the State Defendants now would require the broad swath of additional depositions and fact discovery that Defendants now portend. On balance, the Court finds that any additional fact discovery required to develop claims or defenses on the *Brady* claim is likely to be minimal. Any prejudice further is mitigated by the fact that the deadline to file dispositive motions is not until October 2023, several months from now.

Aside from the limited need to take additional deposition testimony, Defendants also argue that they will be separately prejudiced because both Crumrine and the prosecutor are deceased. *Id.* at 22–23. Those witnesses' unavailability, they argue, deprives them of the opportunity to develop what Crumrine did or did not convey to the prosecutor and what information the prosecutor did or did not convey to Harrell's criminal defense attorney. *Id.* at 23. That is fair enough. But Defendants also inform the Court that Crumrine died in 1998 and the prosecutor died in 2011. *Id.* In other words, had Harrell known of

and asserted the new proposed *Brady* claim in his original Complaint, Defendants would have faced the same inability to obtain the testimony of those witnesses. Accordingly, any "prejudice" resulting from the deaths of those witnesses pre-existed this civil action and thus is not attributable to the proposed amendment. Indeed, Defendants' own citation (*see id.* at 22) undermines their point. *See NVF Co. v. New Castle Cty.*, 276 B.R. 340, 356 (D. Del. 2002) ("[I]f a deceased witness *could have given testimony* both relevant and important to the determination of the action, that witness's death can be enough to satisfy a showing of prejudice.") (emphasis added).

Moreover, as Johnson points out, both parties equally face the same inability to learn facts from Crumrine and the prosecutor, and thus the "prejudice" is evenly distributed. Indeed, it strikes the Court as entirely plausible that without testimony from these witnesses, Johnson will be unable to meet her ultimate burden of proof on the proposed *Brady* claim. Accordingly, notwithstanding the deaths of these two witnesses, the Court sees no unfair prejudice to Defendants in permitting Johnson to file the Second Amended Complaint.

Finally, the Court notes that Johnson's proposed additional *Brady* claim is tightly intertwined with the factual basis of the original causes of actions asserted in both the original Complaint and the First Amended Complaint. With an already-existing *Brady* claim having been asserted against Nichols almost three years ago, Johnson simply proposes to add a related *Brady* claim against other Defendants

based on information that she recently learned. The proposed amendment, in short, hardly alters the landscape.

***

On this record and in these circumstances, the Court cannot identify "undue delay, bad faith, dilatory motive, unfair prejudice, or futility of amendment." *WHY ASAP*, 461 F. Supp. 2d at 311. The Court, accordingly, will permit Johnson to file her proposed Second Amended Complaint [Dkt. 103-1].

### IV. CONCLUSION

For the reasons stated, it is on this 12th day of June, 2023,

ORDERED that Johnson's Motion to Amend the Complaint [Dkt. 86] is GRANTED. Johnson shall file her Second Amended Complaint [Dkt. 103-1] within seven (7) days of this Order and Defendants shall file Amended Answers within fourteen (14) days of the filing of the Second Amended Complaint.

It is further ORDERED that the parties shall meet and confer regarding any additional fact discovery that may be necessary in light of this Order.

It is further ORDERED that the Court will hold a telephonic status conference with the parties on July 26, 2023 at 3:30 p.m. to discuss scheduling.

It is further ORDERED that with the exception of limited additional fact discovery that may be necessary in light of this Order, the operative Amended Scheduling Order [Dkt. 97] shall remain in force pending further Order of the Court.

*[Signature]*

J. BRENDAN DAY
UNITED STATES MAGISTRATE JUDGE